## Cantrell et al. v. Commonwealth.

Feb. 14, 1939.

BURKE & SANDERS for appellants.

HUBERT MEREDITH, Attorney General, and WILLIAM F. NEILL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

At the September term of the Pike circuit court, the grand jury returned an indictment against the appellants, Vernon Cantrell, Boney Williams, Magdalene Wil-

liams, and others, accusing them of the crime of willful murder, committed as follows: That the said Greely Cantrell killed Glen Thornsbury by stabbing him with a knife and that the other defendants, including appellants, were present and did aid, abet, assist, counsel and command Greely Cantrell to kill and murder Glen Thornsbury.

On the call of the case for trial, Greely Cantrell moved for a severance and was granted a separate trial, wherein he was convicted. Thereafter, upon a call and trial of the case against the appellants, the jury returned its verdict, on which judgment was entered, finding the appellant Vernon Cantrell guilty of voluntary manslaughter and fixing his punishment at twenty-one years' confinement in the penitentiary and also the appellants Magdalene and Boney Williams were convicted and sentenced to two years' confinement each in the penitentiary.

Appellants' motion and grounds for a new trial having been overruled, this appeal is prosecuted, seeking a reversal of the judgment on the grounds that:

"1. The court erred in overruling their motion for a peremptory instruction on the ground that the evidence was insufficient to show that they rendered any aid or assistance to Greely Cantrell.

"2. The verdict was flagrantly against the weight of the evidence, and the result of passion and prejudice.

"3. Under the evidence and instruction 5, it was the duty of the jury to return a verdict finding appellants not guilty."

These grounds assigned as errors all being bottomed on the insufficiency of the evidence to support the verdict of conviction, we will, as did counsel for appellants, consider them together.

It was the theory of the commonwealth that appellants aided, advised and encouraged Greely Cantrell in his killing of deceased, after they, with others of their family connections, had followed him some nine hundred or more feet after deceased and other members of his family had left the little church they were attending and were starting on their way home.

It appears, according to the evidence, that upon this

occasion the deceased and his wife, together with his son-in-law, James Thompson, and his wife, had on the evening of July 10, 1937, gone to a nearby church situated near the mouth of Card creek in Pike county, Kentucky. It further appears that soon after the deceased and his family, as stated, had gone to the church, a quarrel arose between James Thompson and Boney Williams, wherein Boney Williams was accused of having stolen Thompson's whiskey, when Williams called him a "g. d. s. o. b."; that a fight ensued between them, in which Williams was knocked down and somewhat bruised by Thompson; that thereupon, to get away from this trouble which had been thus started, the deceased Thornsbury, his wife and daughter and her husband, Thompson, all at once left the church and started down the road to their home, when they were quickly pursued by the members of the irate and highly incensed Cantrell family.

The evidence for the commonwealth is as to this that Greely Cantrell, his son, Troy, Boney Williams and Magdalene Williams all rushed madly after the departing Thornsburys and Thompsons, loudly defaming and cursing them and throwing a hail of rocks at them as they drew near; also, that Greely Cantrell rushed up to Thornsbury and stabbed him, when he fell from the road and soon died; also, that Troy Cantrell rushed up to Thompson and struck him in the head with a rock, when he too pitched forward from off the road, falling against a fence below, where he was followed and further beaten by Troy.

Vernon Cantrell testifies that he had been at this time on a frog hunt but was returning when he met this crowd on the highway and was accosted by the deceased, Glen Thornsbury, when a fight ensued between them, in which he was being badly cut up by Thornsbury, who had him down and was jabbing him with a knife, when he managed to get hold of his own knife, with which he jabbed Thornsbury about the collar bone, killing him.

Other witnesses testify as to there having been, after the fight occurred between Thompson and Williams at the church, a general onslaught and combined attack by the Cantrells and Williams upon the fleeing Thornsbury and Thompson families and that Greely Cantrell and members of his family, including the appel-

lants Magdalene and Boney Williams, were all pursuing and making a combined attack upon the deceased, Thornsbury, and aiding, assisting and encouraging Greely Cantrell in his deadly assault upon the deceased Thornsbury.

The appellants and their witnesses testify that they were not present, aiding and assisting Greely Cantrell at the time and place he assaulted and killed the deceased, Thornsbury.

However, as stated, there was ample evidence introduced by the commonwealth to sustain the jury's verdict finding that they had aided and abetted Greely Cantrell in his killing of Thornsbury.

Also, the appellant Vernon Cantrell testified that not his father, Greely Cantrell, but he, had killed Thornsbury by stabbing him; that he did so in his self-defense, as Thornsbury at the time had him down and was slashing him with a knife and intending to kill him.

From this conflicting evidence, the jury found the appellants guilty as charged. We are, therefore, clearly of the opinion that such being the evidence against them, there is no merit in the contention made by counsel in their behalf, that the defendants were entitled to a peremptory instruction to acquit them or that the verdict was flagrantly against the evidence, or the result of passion, or even that, under instruction 5 as given by the court, they were entitled to an acquittal.

By this instruction 5, which counsel for appellants argues entitled them to an acquittal, the court told the jury in substance that if they believed from the evidence that Glen Thornsbury was killed by Vernon Cantrell, as claimed by him, and not by Greely Cantrell, then in such event Vernon Cantrell, Magdalene Williams and Boney Williams were entitled to an acquittal and they would find them not guilty.

However, as to this, the jury, even though the appellant Vernon Cantrell had testified that he was the one, not his father who had killed Thornsbury and that he killed him in his self-defense, did not see fit to accept his account of the killing or to believe that he, rather than Greely Cantrell, who had already been tried and convicted for killing Thornsbury, was the one who had slain him.

The jury was the judge of the credibility of these witnesses and had the right not to accept Vernon Cantrell's version of Thornsbury's killing as true.

Such being our conclusion, it follows that there having been ample evidence to warrant the jury in its finding, and to support its verdict finding the appellants guilty, as stated, the judgment of the court entered thereon should be and it is affirmed.